## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GERALD SILVER, on behalf of himself
and others similarly situated,

    Plaintiff,

v.                                                                                  No. 1:22-cv-00400 MIS/GBW

CITY OF ALBUQUERQUE,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant's Motion to Dismiss and Memorandum in Support of Motion to Dismiss (collectively "the Motion"). ECF Nos. 11, 12. Plaintiff responded, and Defendant replied. ECF Nos. 13, 18. Having considered the parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

## BACKGROUND

This case arises out of a series of pre-recorded calls Defendant City of Albuquerque allegedly placed to citizens, including Plaintiff, publicizing socially distanced town halls. ECF No. 1 at 10. Plaintiff alleges that Defendant held "at least 16 virtual town halls" between March 23, 2020, and May 19, 2022. *Id.* at 6. Plaintiff contends that "[o]n the days immediately preceding each of the virtual town halls, [Defendant] publicized the events by using Broadnet's 'auto-calls,' 'notifications' product to make prerecorded voice calls to thousands of Albuquerque residents, inviting them to attend." *Id.* at 6–7. Plaintiff also claims that Defendant would make same-day calls to allow citizens to be "patched through to the event." *Id.* Plaintiff further alleges that there was no option to opt-out of

these calls, and that citizens' numbers were harvested from 3-1-1. *Id.* at 8–9. Plaintiff alleges that Defendant made a minimum of eight prerecorded voice calls to him personally regarding virtual town halls, between May 13, 2020, and December 2, 2020. *Id.* at 10.

Plaintiff asserts that these calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and asks that the Court award damages to him and an as-yet uncertified class of consumers, and grant an injunction barring Defendant from continuing similar conduct. *Id.* at 20. On July 27, 2022, Defendant filed its Motion, requesting the Court dismiss the case in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the basis that the TCPA does not apply to Defendant and, further, does not apply to its conduct due to the ongoing public health emergency. *See generally* ECF No. 12.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the

plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## DISCUSSION

Defendant argues that the TCPA does not apply to it as a local government is not a qualifying "person" under the statute. ECF No. 12 at 7. In the alternative, Defendant contends that even if the Court were to apply the TCPA to it, Defendant's conduct falls into the "emergency purpose" exception. *Id.* at 11.

Plaintiff, meanwhile, maintains that the recent order of the Federal Communication Commission ("FCC") finding that local governments are "persons" under the TCPA is binding on this Court, and the TCPA therefore applies to Defendant. ECF No. 13 at 12–15. Plaintiff also argues that Defendant's calls do not fall under the TCPA's "emergency purposes" exception as the calls did not "communicate urgent information" about COVID-19. ECF No. 13 at 20.

**I.     Whether the TCPA Applies to Defendant**

The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes . . . ." 47 U.S.C. § 227(b)(1)(B). Congress has authorized the FCC to implement rules and regulations to enforce the TCPA. 47 U.S.C. § 227(b)(2). "[T]he federal judiciary accords considerable deference to an agency's interpretation of a statute that Congress has tasked it with enforcing." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1219 (D.N.M. 2019) (citing *United States v. Undetermined Quantities of Bottles of an Article of Veterinary Drug*, 22 F.3d 235, 238 (10th Cir. 1994)); *see also Chevron, U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

A party aggrieved by a final order of the FCC must first petition the agency for reconsideration before proceeding to an appellate court—it may not contest the order in a district court. *See* 28 U.S.C. § 2342(1); *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2054 (2019); *F.C.C. v. ITT World Commc'ns, Inc.,* 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."); *Sterling v. Mercantile Adjustment Bureau, LLC*, 667 F. App'x 344, 345 (2d Cir. 2016) ("Although [Defendant] disagrees with the FCC's interpretation of the statute, [Defendant] is barred from challenging the FCC's ruling before this Court."); *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 461 (11th Cir. 2012) ("Because the courts of appeals have exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC, the district courts do not have it.")

According to the FCC, "local government entities, including counties, cities, and towns, are 'persons' within the meaning of section 227(b)(1) and are, therefore, subject to the TCPA." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Petition for Declaratory Ruling Nat'l Consumer L. Ctr. Petition for Reconsideration & Request for Stay Pending Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling Pro. Servs. Council Petition for Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling* ("Broadnet"), 35 F.C.C. Rcd. 15052, 15053, 15062 (2020) (finding that "local governments, unlike federal and state governments, are not sovereign entities . . . .").

Here, Defendant is a local government entity—the City of Albuquerque—and not a state or federal government actor. However, Defendant argues that the Court should reject the FCC's ruling as it is "not binding precedent on this Court." ECF No. 12 at 7. Defendant also contends that the history of sovereign immunity in New Mexico undermines the logic of *Broadnet*. *Id.* at 9, n.7. Defendant maintains that neither *Chevron* nor *Skidmore* deference applies, as the FCC's reasoning in *Broadnet* is neither persuasive nor reasonable. ECF No. 18 at 7.

The Court does not find the FCC's ruling in *Broadnet* to be particularly unreasonable or unpersuasive. *See Broadnet* at 15063–64 (noting that Congress specifically considered, and rejected, a special exemption for government entities and that "[b]ecause of Congress' clear intent to protect consumers, we interpret any ambiguity to the benefit of the consumer."). However, even assuming arguendo that *Broadnet* is binding on this Court, the Court finds that Defendant's conduct falls into the emergency purposes exception, as discussed below. The Court will therefore grant Defendant's Motion without reaching this argument.

## II.     Whether the Emergency Purposes Exception Applies to the Calls

Liability generally attaches under the TCPA when an actor makes prerecorded calls in the absence of a recipient's express written consent. 47 U.S.C. § 227(b)(1)(B). However, calls or texts made for an emergency purpose are exempt from this requirement. *Id.*; *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054, 9062 (2016) ("2016 FCC Order"). The term "emergency purpose" refers to contacts "made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). The emergency purposes

exception is intended for situations in which the use of prerecorded message calls could "speed the dissemination of information" to the public regarding hazardous conditions. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 2840, 2841 (2020) ("March 2020 FCC Order") (quoting *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8778 (1992)).

The emergency purpose exception is interpreted broadly. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736, 2738 (1992) ("The legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly."). For example, the FCC has applied this exception to informational messages about events as trivial as weather-related school closures. *See 2016 FCC Order* at 9063; *see also Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1257–58 (W.D. Wash. 2021).

The FCC has stated that the COVID-19 pandemic constitutes an emergency under the TCPA, and that government officials "may lawfully communicate information about the novel coronavirus *as well as mitigation measures* without violating federal law." *March 2020 FCC Order* at 2840 (emphasis added). In determining whether a call relating to the COVID-19 pandemic falls under the emergency purposes exception, a court first looks to the identity of the caller—namely, the caller must be from a hospital, or be a health care provider, state or local health official, other government official, or a person under the express direction of such an organization and acting on its behalf. *Id.* Second, a court looks to the content of the call, which must (1) be solely informational, (2) made necessary because of the COVID-19 outbreak, and (3) directly related to the imminent health or

6

safety risk arising out of the COVID-19 outbreak. *Id.*; *see also Gabertan*, 523 F. Supp. 3d at 1258; *Horton v. Tarrant Cnty. Hosp. Dist.*, No. 4:22-CV-9-P, 2022 WL 702536, at *2 (N.D. Tex. Feb. 4, 2022), *report and recommendation adopted*, 2022 WL 620950 (N.D. Tex. Mar. 3, 2022).

The FCC provided the examples of "a call made by a county official to inform citizens of shelter-in-place requirements, quarantines, medically administered testing information, or school closures necessitated by the national emergency" as illustrations of calls that would fall into the emergency purposes exception, "as such measures are designed to inhibit the spread of the disease*." March 2020 FCC Order* at 2842. The March 2020 FCC Order also mentioned social distancing as one of the lifesaving measures government officials may need to communicate about during the pandemic:

> Efforts to slow the spread of the disease depend in part on effective communications with the American public about measures such as *social distancing* that can mitigate transmission of the illness, as well as other health and safety information that could save lives.

*Id.* at 2840 (emphasis added).

Here, Plaintiff alleges that Defendant made a minimum of eight prerecorded voice calls to him regarding virtual town halls, between May 13, 2020, and December 2, 2020. ECF No. 1 at 10. For example, Plaintiff states that one such voice call, allegedly made May 13, 2020, consisted of the following:

> Hi. This is Mayor Tim Keller, inviting you to join a live town hall tomorrow, Thursday, at 7:30 pm. I'll be providing an update on the next phase of recovery for the City of Albuquerque and take questions live. It's at 7:30 tomorrow and you'll receive a call just like this one, and, to participate in the town hall, just stay on the line. There's no cost to join the call. And you can also sign up for the telephone town hall and other events by visiting cabq.gov/townhall. For immediate questions or assistance, please check out that same website or call 311. Hope to see you tomorrow.

ECF No. 1 at 10. Plaintiff states that Defendant made calls only to numbers with the 505 Albuquerque area code. *Id.* at 11. The parties agree that there was no commercial purpose to these calls. ECF Nos. 12 at 14; 13 at 22.

### A. Whether the Court May Take Judicial Notice of the Pandemic

Plaintiff alleges that the Court may not go beyond the four corners of the complaint to consider the status of the COVID-19 pandemic at the time of the offending calls. ECF No. 13 at 4. A court may, however, take judicial notice of a fact that is "generally known." Fed. R. Evid. 201(b)(1).

The Court hereby takes judicial notice of the fact that, although it may soon end, the COVID-19 pandemic emergency currently remains ongoing and was in its first year during the alleged conduct.[1] *See Gabertan*, 523 F. Supp. 3d at 1258 n.4 (taking judicial notice of the COVID-19 pandemic); *Horton*, 2022 WL 702536, at *3 (noting that "as a matter of law Defendant's text was sent within the timeframe of a national emergency declaration").

### B. Whether Social Distancing Qualifies as a Pandemic Mitigation Measure

Even taking into account the COVID-19 pandemic, Plaintiff alleges that the calls fail to qualify for an emergency purposes exception as the language of the calls themselves does not reference COVID-19. ECF Nos. 1 at 10; 13 at 20 (stating that "they

---

[1] *See* Determination that a Public Health Emergency Exists (January 31, 2020), https://www.phe.gov/_emergency/news/healthactions/phe/Pages/2019-nCoV.aspx; *see also* Fact Sheet: COVID-19 Public Health Emergency Transition Roadmap (February 9, 2023), https://www.hhs.gov/about/news/2023/02/09/fact-sheet-covid-19-public-health-emergency-transition-roadmap.html.

themselves did not communicate urgent information"). Defendant, meanwhile, argues that

> [t]he amount of information citizens needed to navigate the pandemic could not have been provided in a prerecorded telephone call. The pandemic presented a wide range of novel, complex, and evolving issues, including, for example, vaccine availability, business closings, [small business loan] disbursements, hospital capacities, and bus schedules. The virtual town hall meetings provided a forum where these issues could be addressed in detail and where citizens could ask questions.

ECF No. 18 at 10 n.11 (citation omitted). Defendant also maintains that

> context is key to determining application of the emergency purpose exception . . . . In 2020, COVID-19 cases were rising, businesses were closing, and the public was learning how to live, work, and attend school remotely. There was no mystery [as to] why [Defendant] was calling or what the virtual town hall meetings were about.

ECF No. 18 at 10. Regarding calls explaining how to take part in socially distanced informational public meetings during the first year of the pandemic, the Court agrees there is no mystery as to the reason. *Iqbal*, 556 U.S. at 679 (determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Plaintiff argues that the Court may not look at the agenda of the town halls themselves, and that, in any event, the town halls referenced in the pre-recorded calls covered topics other than COVID-19. ECF No. 13 at 4, 7. Defendant, meanwhile, maintains that the content of the town halls referenced in the calls is incorporated by reference into the Complaint. ECF No. 12 at 5. Both sides agree, however, that the pre-recorded calls provided information about the social distancing of the town halls, ECF Nos. 1 at 5– 7; 12 at 3, and as mentioned above, social distancing *itself* is a mitigation measure that the FCC has said fits into the emergency purposes exception, *March 2020*

*FCC Order* at 2840. In other words, it is not the content of the virtual town halls, but the fact that they were *virtual*—socially distanced, as opposed to being held in person—that controls. *Id.*

What Plaintiff fails to account for is that the FCC not only explicitly stated that the COVID-19 pandemic constitutes an emergency under the TCPA, but also that government officials "may lawfully communicate information about the novel coronavirus *as well as mitigation measures* without violating federal law." *March 2020 FCC Order* at 2840 (emphasis added). That is, under the FCC's orders, government officials are not exempted from liability under the TCPA only when communicating scientific or medical facts about the pandemic, but also when communicating facts about measures related to mitigating the effects of the pandemic—such as, for example, the social distancing of public events. *Id.* at 2842 (excepting from liability measures which "are designed to inhibit the spread of the disease"). As Defendant explains, its "prerecorded calls were not only made during the pandemic, but they were necessitated by the fact that the pandemic required information to be communicated remotely." ECF No. 12 at 15.

The *Gabertan* court's logic is instructive here. In *Gabertan*, the plaintiff complained of a text message sent by the defendant pharmacy to his cell phone, informing him about options for contactless pick-up of his prescription, including both curbside pick-up and mailing. 523 F. Supp. 3d at 1256. The court held that these text messages fit into the emergency purposes exception to liability under the TCPA, explaining:

> [Plaintiff's] claim that he did not face "death or serious injury" in the absence of access to his prescription thus misses the point. The information provided was about how to access even optional prescription medications in the context of a pandemic threatening the public, including [Plaintiff]. *The emergency was the pandemic, not the content of the prescription.*

10

*Id.* at 1261 (emphasis added). The court held that these text messages, sent by a for-profit pharmacy, fell "facially, squarely within the emergency exception." *Id.*

Here, as in *Gabertan*, there is no nuance related to the phone calls, their content, or their purpose. The sole purpose was to provide information to citizens about the social distancing of an informative public event, and how to ask questions and access that public event. *See also Bennett v. GoDaddy.com LLC*, No. CV-16-03908-PHX-ROS, 2019 WL 1552911, at *8 (D. Ariz. Apr. 8, 2019) ("[I]t is the purpose behind a call that controls, not what happened during the call."). The calls therefore fall into the broad emergency purposes exception. *See, e.g., FCC 2016 Order* at 9063 (including school closures due to inclement weather and unexcused absences under the emergency purposes exception).

Plaintiff alleges that there were less intrusive ways that Defendant could have communicated the same information about the virtual town halls. ECF Nos. 1 at 7; 13 at 22. As discussed above, however, this is not the standard—the TCPA does not require the government to be as restrained as possible when disseminating information during an emergency. *March 2020 FCC Order* at 2840 ("Efforts to slow the spread of the disease depend in part on effective communications with the American public about measures . . . that can mitigate transmission of the illness, as well as other health and safety information that could save lives."). Given the broad interpretation of the emergency purposes exception—and in the context of the early pandemic—the Court finds that announcing socially distanced town halls during a worldwide pandemic is at least as urgent as announcing a snow day. *See FCC's March 2020 Order* at 2842; *FCC 2016*

*Order* at 9063; ECF No. 1 at 10 (complaining of prerecorded calls received between May 13, 2020, and December 2, 2020). As a school closure is not, in itself, an emergency, but a *response* to a weather emergency, so social distancing was a response to the pandemic. These calls are, therefore, exempted under the TCPA as a matter of law.

The emergency purposes exception is not entirely without teeth; for example, pharmacies, who have a business-related reason for making prescription reminder calls, do not have carte blanche to make infinite attempts to call and text consumers regarding prescription refills, *Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 801 (W.D. Tenn. 2022) (collecting cases), and school districts are not allowed to call and text parents about absolutely anything school-related, *FCC 2016 Order* at 9063–64 (excluding notifications of upcoming teacher conferences or general school activities from the emergency purposes exception). Similarly, if Plaintiff had alleged Defendant made many more calls per event, or that such calls continued past the date of the national emergency, the Court's analysis might be different. Here, however, even interpreting the facts in the manner most favorable to Plaintiff, Defendant's alleged conduct clearly falls into the broad emergency purposes exception to liability under the TCPA. Therefore, the Court will grant Defendant's Motion.

III.     **Plaintiff's Request to Amend**

Plaintiff, in his response to Defendant's Motion, also requests leave to amend. ECF No. 13 at 23. But "[a] court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (also recognizing the importance of compliance with local rules). The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the status

*Order* at 9063; ECF No. 1 at 10 (complaining of prerecorded calls received between May 13, 2020, and December 2, 2020). As a school closure is not, in itself, an emergency, but a *response* to a weather emergency, so social distancing was a response to the pandemic. These calls are, therefore, exempted under the TCPA as a matter of law.

The emergency purposes exception is not entirely without teeth; for example, pharmacies, who have a business-related reason for making prescription reminder calls, do not have carte blanche to make infinite attempts to call and text consumers regarding prescription refills, *Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 801 (W.D. Tenn. 2022) (collecting cases), and school districts are not allowed to call and text parents about absolutely anything school-related, *FCC 2016 Order* at 9063–64 (excluding notifications of upcoming teacher conferences or general school activities from the emergency purposes exception). Similarly, if Plaintiff had alleged Defendant made many more calls per event, or that such calls continued past the date of the national emergency, the Court's analysis might be different. Here, however, even interpreting the facts in the manner most favorable to Plaintiff, Defendant's alleged conduct clearly falls into the broad emergency purposes exception to liability under the TCPA. Therefore, the Court will grant Defendant's Motion.

III.    **Plaintiff's Request to Amend**

Plaintiff, in his response to Defendant's Motion, also requests leave to amend. ECF No. 13 at 23. But "[a] court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (also recognizing the importance of compliance with local rules). The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the status

of a motion and do not put the issue before the district court." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir.), *cert. denied*, 211 L. Ed. 2d 289 (2021). Moreover, in this District, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1.

Here, Plaintiff's bare request for leave to amend, without a proposed amended complaint, is insufficient. The Court will therefore deny Plaintiff's request for leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 11, is **GRANTED** and Plaintiff's Complaint is **DISMISSED.**

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE